FOR PUBLICATION

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*<br><br>         Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP) |
| LEHMAN BROTHERS HOLDINGS INC.,<br>         Plaintiff.<br>v.<br><br>BARCLAYS CAPITAL, INC.,<br>         Defendant. | Adv. Proc. No. 09-01731 (JMP) |

**DECISION DENYING MOTION OF LEHMAN BROTHERS HOLDINGS INC. FOR SUMMARY JUDGMENT AND GRANTING MOTION OF BARCLAYS CAPITAL, INC. FOR SUMMARY JUDGMENT ON COUNT II OF ADVERSARY COMPLAINT**

JONES DAY
*Attorneys for Lehman Brothers Holdings Inc., et al.*
222 East 41st Street
New York, New York 10017

    Robert W. Gaffey, Esq.
    William J. Hine, Esq.

BOIES, SCHILLER & FLEXNER LLP
*Attorneys for Barclays Capital, Inc.*
575 Lexington Avenue
New York, New York 10022

    Jonathan D. Schiller, Esq.

BOIES, SCHILLER & FLEXNER LLP
*Attorneys for Barclays Capital, Inc.*
5301 Wisconsin Avenue, N.W.
Washington, D.C. 20015

      Hamish P.M. Hume, Esq.

JAMES M. PECK
United States Bankruptcy Judge

      The court heard oral argument on September 7, 2011 on pending cross-motions for summary judgment in relation to breach of contract claims stated in Count II of the Adversary Complaint. These claims all relate to certain liabilities assumed by Barclays Capital, Inc. ("Barclays") to pay bonus compensation to former employees of Lehman Brothers Inc. ("LBI") who became employees of Barclays (the "Transferred Employees") in connection with the acquisition of the North American broker-dealer business of LBI and Lehman Brothers Holdings Inc. ("Lehman" or "LBHI"). The amount in dispute is $500 million. The Court assumes familiarity with the background of the sale to Barclays, subsequent procedural developments relating to that sale and the resulting 60(b) Opinion (defined below).

      The Court is denying the motion for summary judgment brought by Lehman (the "Lehman Motion") and granting the motion filed by Barclays (the "Barclays Motion"). The Lehman Motion is baseless. It relies on the truth of three propositions, but, upon examination, not one of these is valid and sustainable. The propositions are: (i) a presumed finding of fact within the 60(b) Opinion regarding the agreement to compensate Transferred Employees that is not to be found within the text of the opinion, (ii) an alleged but non-existent firm commitment to pay $2 billion in bonus compensation to these employees that is contradicted by the trial record, and (iii) an asserted right to breach of contract damages that Lehman has not suffered and is unable to demonstrate.

2

*Background of Adversary Proceeding*

On October 27, 2009, the Court entered a scheduling order (the "Scheduling Order") concerning the motions that led to the 60(b) Opinion (each, a "60(b) Motion," and together, the "60(b) Motions"). Case No. 08-13555, ECF No. 5636; Case No. 08-01420, ECF No. 1989. The Scheduling Order contemplated the possible filing of adversary complaints in relation to the 60(b) Motions and set a deadline of November 16, 2009 for commencing these actions.

Pursuant to the Scheduling Order, on November 16, 2009, LBHI filed the adversary complaint under Fed. R. Bankr. P. 7001 commencing this adversary proceeding. As anticipated in the Scheduling Order, the adversary complaint to some extent overlapped with one or more of the 60(b) Motions. Accordingly, LBHI and Barclays, along with other parties to the 60(b) Motions, entered into a stipulation (the "Adversary Proceeding Stipulation") providing for the resolution of certain aspects of the adversary proceeding in conjunction with resolution of the 60(b) Motions and deferring certain claims for further adjudication. The Adversary Proceeding Stipulation was "so ordered" by the Court. ECF No. 4. Count II of the Complaint was one of those remaining claims that the parties agreed to defer.

On February 22, 2001, the Court issued the 60(b) Opinion. Case No. 08-13555, ECF No. 14612. On April 29, 2011, counsel for LBHI (i) advised that all counts other than Count II of the Complaint were being dismissed and (ii) requested a pre-motion conference on its anticipated summary judgment motion on Count II. ECF No. 5. LBHI then filed the Lehman Motion. ECF No. 7. Barclays presented vigorous opposition to that motion and submitted the Barclays Motion asserting an entitlement to judgment as to Count II. ECF No. 10. The matters have been fully briefed.

*Standard*

Summary judgment is appropriate where there is "no genuine issue as to any material fact," and the moving party is entitled to "judgment as a matter of law." Fed. R. Civ. P. 56(c); *see NML Capital v. Republic of Argentina*, 621 F.3d 230, 236 (2d Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The court must view the facts in the light most favorable to the non-moving party, and must resolve all ambiguities and draw all inferences against the moving party. *See NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 178 (2d Cir. 2008) (citing *Liberty Lobby*, 477 U.S. 242 at 255; *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir. 1991)). In determining whether to grant a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (citing *Liberty Lobby*, 477 U.S. at 249). Here, the standard is satisfied as to the Barclays Motion.

*Discussion*

Lehman has asserted that it is entitled to judgment on grounds of collateral estoppel based on findings of fact made in the Court's memorandum decision denying relief under Rule 60(b), *In re: Lehman Brothers Holdings Inc.*, 445 B.R. 143 (Bankr. S.D.N.Y. 2011), (the "60(b) Opinion"). LBHI Br. Supp. ¶¶ 49-53. Lehman believes that the Court found that Barclays agreed to pay total bonus compensation in the agreed fixed amount of $2 billion but paid only $1.5 billion for bonuses. LBHI Br. Supp. ¶¶ 43-47. As a result, Lehman submits that it should be entitled, as seller of the broker-dealer business, to the $500 million difference between these two numbers. LBHI Br. Supp. ¶ 48. Lehman makes this assertion even though the shortfall represents an amount that constitutes an assumed liability for the 2008 fiscal year annual bonuses

4

payable to the Transferred Employees, rather than consideration to be paid directly to Lehman. Id.  Lehman acknowledges that the liability is owed to the Transferred Employees but nonetheless claims that, as seller of the assets to Barclays, it has the legal right to recover these funds as unpaid agreed consideration that is due and owing under the Asset Purchase Agreement (the "APA").  Id.

Barclays strenuously disagrees with Lehman's argument, contending that judgment should be entered in its favor because (i) the doctrine of collateral estoppel on which Lehman relies is inapplicable, (ii) it fully performed all obligations owed to the Transferred Employees under Article IX of the APA, and (iii) Lehman is not entitled under any circumstances to recover damages for the alleged breach because the compensation benefits, regardless of amount, were owed to the Transferred Employees, not to Lehman.  Barclays Br. Opp'n ¶¶ 59-71, 94-97, 110. Furthermore, since there has been no showing that Transferred Employees have any claims against Lehman for unpaid bonus compensation, Barclays contends that Lehman has not been damaged and has no remedy for breach of contract even if it could be established that Barclays had not paid all bonus compensation[1] specified in Article IX of the Asset Purchase Agreement. Barclays Br. Opp'n ¶¶ 98-99.

The Court sides with Barclays on this unresolved remnant of the litigation that produced the 60(b) Opinion.  Instead of supporting summary judgment for Lehman on Count II, the Court's findings in the 60(b) Opinion regarding estimates for assumed compensation liabilities in fact are consistent with the entry of judgment for Barclays.  The parties engaged in a process to

---

[1] Lehman asserts that bonus compensation as found by the Court amounts to $1.5 billion.  LBHI Br. Supp. ¶¶ 46-47; *see also Lehman,* 445 B.R. at 174 ("In the end, subtracting out all non-bonus payments, Barclays paid approximately $1.5 billion in bonuses to Transferred Employees"). Barclays has asked for the right to present further evidence, if needed, to demonstrate that it paid $1.8 billion for bonus compensation, including a possible reallocation of a bonus component that allegedly was paid as part of severance to certain former Lehman employees.  Barclays Br. Opp'n ¶¶ 90-91.  Given the ruling of the Court, the actual amount allocated to bonus compensation has no bearing on the outcome.

estimate the overall exposure for these liabilities but never agreed on a definitive single number for bonus compensation.

The Lehman Motion is based on a misunderstanding of the 60(b) Opinion or perhaps wishful thinking. The Court did not determine that the amount for bonus compensation was equal to the $2 billion amount listed for "Comp" on a financial schedule created on September 16, 2008 and did not conclude that this number was incorporated into the APA as a fully liquidated obligation of Barclays. The Court always understood that the $2 billion number "reflected on the financial schedule delivered to Purchaser on September 16, 2008 and initialed by an officer of each of Holdings and Purchaser" (*see* section 9.1(c) of APA, BCI Ex. 1 (M Ex. 1))[2] was intended to cover "Comp" (both severance and bonus related items) and was an approximation – a rough, good faith estimate of the total compensation amounts that were to be assumed by Barclays. Greater precision was not realistic at the time, and the $2 billion overall estimate turned out to be fairly close to the aggregate compensation amounts actually paid by Barclays to the Transferred Employees under sections 9.1(b) and 9.1(c) of the APA.

The total amount payable for the bonus compensation ("Accrued 08 FY Liability" as defined in section 9.1(c); *see* BCI Ex. 1 (M Ex. 1) § 9.1(c)) represents bonus pool amounts that had been accrued by Lehman for incentive compensation. This necessarily was a subset of the $2 billion general estimate for all compensation-related liabilities. Contrary to Lehman's reading of the 60(b) Opinion, the Court did not make, and certainly never intended to make, any factual finding that Barclays ever agreed to pay the entire $2 billion amount ascribed to "Comp" solely for bonus compensation. Such a finding would be contrary to the evidence presented at trial

---

[2] Unless otherwise specified, the document references are contained within the record of the hearings on the 60(b) Motions. Documents designated as "BCI Ex." are exhibits submitted by Barclays; documents designated "M Ex." are exhibits submitted by the movants.

regarding the meaning of the term "Comp" as used on the financial schedule initialed on September 16, 2008 and is not supported by the language of section 9.1(c) of the APA. Indeed, the Court specifically found "that the estimates for comp and cure that the parties presented at the Sale Hearing were just that – good faith estimates, and not guarantees or representations that these were firm numbers." *Lehman*, 445 B.R. at 178.

Lehman in this instance has misconstrued the meaning of the 60(b) Opinion and has identified findings of the Court that, quite simply, were not made and that the Court never had any intention of making. Obviously, such illusory findings with regard to the liabilities assumed by Barclays under the APA cannot form the basis of an argument that collateral estoppel should apply to the relief sought in Count II, and Lehman is not entitled to judgment on those grounds.

But beyond the inapplicable arguments advanced by Lehman on the subject of issue preclusion, Lehman's claim for breach of contract fails on the merits based upon the record developed during the lengthy 60(b) trial. The evidence demonstrates that Barclays never agreed to pay a fixed sum for total bonus compensation and that the amount payable, as stated in section 9.1(c) of the APA, was equal to "100 percent of the bonus pool amounts accrued." That number indisputably is smaller than the $2 billion figure for total "Comp".

Lehman has advocated a reading of section 9.1(c) that departs from the most logical meaning of the passage, that is inconsistent with the record and that confuses the unspecified accrued amounts for bonus compensation with the specified total estimate "reflected on the financial schedule," i.e., the $2 billion number listed on the schedule for "Comp". Lehman's construction of the language is based on the proposition that the aggregate "Comp" number from the financial schedule should dominate the definition of "Accrued 08 FY Liability" as that term is used in section 9.1(c). That is an improper reading of the language.

The relevant portion of 9.1(c) states as follows:

> Purchaser [Barclays] shall … pay … ("08 Annual Bonuses") in respect of the 2008 Fiscal Year that, in the aggregate, are equal in amount to 100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary) and reflected on the financial schedule delivered to Purchaser on September 16, 2008 and initialed by an officer or each of Holdings [Lehman] and Purchaser (the "Accrued 08 FY Liability").

BCI Ex. 1 (M Ex. 1) § 9.1(c).

The defined term "Accrued 08 FY Liability" in this sentence is used as a label to identify the total liability for bonus compensation owed to Transferred Employees that is being assumed by Barclays under the APA. Measurement of the obligation is tied to *amounts accrued* and reflected on a financial schedule that was cited frequently during the Rule 60(b) trial. The schedule (BCI Ex. 106; M Ex. 2) references the $2 billion estimate for assumed "Comp" liabilities.

Given the reference to this schedule in the definition of Accrued 08 FY Liability, Lehman submits that the $2 billion amount reflected on the schedule for "Comp" must control the meaning of the term and pinpoints the liability at a fixed $2 billion agreed number. However, that construction disregards both the significance of the words *amounts accrued* and the evidence showing that the number for "Comp" on the schedule was not limited to bonus compensation and was an estimate of the total liability to be assumed for both bonus and severance exposure.

The amounts accrued for bonus compensation are included within the number reflected on the financial schedule, and in that respect the words used can be read consistently by concluding that Barclays agreed to pay the amounts accrued for bonuses to Transferred Employees (together with amounts for severance as detailed in section 9.1(b) of the APA) but did not agree by means of an oblique incorporation by reference of the initialed financial

8

schedule to assume $2 billion in stipulated liabilities solely for bonus compensation. Lehman's reading of section 9.1(c) to include an agreed number is not just strained, it is plainly incorrect.

Thus, Lehman is unable to establish that Barclays agreed to assume liabilities amounting to $2 billion for bonus compensation for two reasons. First, the 60(b) Opinion never made any factual findings that Barclays agreed to assume liabilities for bonus compensation in the amount of $2 billion (nor could it have done so, given the evidence presented), and to argue otherwise is to misconstrue the opinion. Consequently, collateral estoppel is not a relevant consideration in ruling on the Lehman Motion. Second, regardless of the absence of pertinent findings in the 60(b) Opinion, the operative language of the APA plainly states that the liabilities being assumed by Barclays for bonus compensation are to be determined by referring to Lehman's internal bonus accruals for the 2008 fiscal year. These accruals, whatever they turned out to be, would determine the amount of the total liabilities being assumed for bonuses. And once assumed and satisfied, Barclays no longer would be obligated to pay bonus compensation to the Transferred Employees or any other party.

The impossibility of having any residual liability to Lehman after Barclays has already satisfied all liabilities for bonuses owed to Transferred Employees points to another extreme weakness in the Lehman Motion. Even if the APA somehow can be interpreted as including an unambiguous agreement to assume a liability for bonus compensation in the fixed amount of $2 billion, Lehman still would be unable to prevail in seeking to recover the difference between bonuses actually paid to Transferred Employees based on bonus accruals (assumed to be $1.5 billion in the 60(b) Opinion) and $2 billion.

While simple subtraction would yield a $500 million shortfall, that calculation does not establish Lehman's right to recover that amount. Even if such a variance could be shown,

Lehman has not been damaged because it has achieved everything that it possibly could have achieved under Article IX of the APA – assumption by Barclays of all compensation obligations owed to Transferred Employees and the corresponding extinguishment from its balance sheet of all such liabilities.  Article IX of the APA sets forth the agreement of Barclays to assume Lehman's liabilities to these employees, not to pay any consideration to Lehman.

In arguing for summary judgment in its favor, Lehman seeks to exploit the asserted $500 million negative variance in the assumed liabilities to achieve a recovery for itself (in effect, incremental consideration not tied to any provable amounts owed to the Transferred Employees) even though that variance has neither damaged Lehman nor left it exposed to any liabilities of Transferred Employees.  The critical missing ingredient in all of this is that Lehman is unable to show that it still has any ongoing liabilities to these employees.  Without such a showing, Lehman has suffered no damages regardless of the actual amount of the employee liabilities that have been assumed by Barclays under the APA and paid to the Transferred Employees.  This is fatal to the Lehman Motion.  *See United States v. Gallo,* 859 F.2d 1078, 1084 (2d Cir. 1988) (finding that "a partial breach with no harm or damage to the complaining party cannot be a basis for a contract action") (citing *Calabria v. Associated Hospital Service*, 459 F. Supp. 946, 949 (S.D.N.Y. 1978) ("Under New York law, in the absence of allegations of facts showing damages, allegations of a breach of a contract will not be sufficient")).

The cases cited by Lehman are not helpful.  They all involve distinguishable situations in which parties seeking damages for breach of contract were able to demonstrate actual harm caused by the failure to make payments to identified third parties.  These cases do not support the claim for relief in Count II nor do they establish a general rule that would permit a party to a contract that has not suffered damages to prevail in a breach of contract action simply by

10

showing that a breach occurred. Lehman is unable to satisfy its burden to show any damages caused by the alleged failure of Barclays to pay all bonuses to Transferred Employees as provided in section 9.1(c).

Lehman no longer has any ongoing liabilities to the Transferred Employees for bonus compensation and can show no damages due to the alleged breach of section 9.1(c) of the APA. In common vernacular, this is a "no harm, no foul" situation in which Lehman has not been hurt regardless of the amounts paid by Barclays to Transferred Employees because the Accrued 08 FY Liability has been assumed and satisfied in full.

### *Conclusion*

For the reasons stated, the Court denies the Lehman Motion and grants the Barclays Motion. Barclays is directed to submit an order consistent with this decision.

IT IS SO ORDERED.

Dated: New York, New York
September 14, 2011

        *s/ James M. Peck*
        HONORABLE JAMES M. PECK
        UNITED STATES BANKRUPTCY JUDGE